1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| JESSE DOMINGUEZ, individually, and on behalf of other members of the general public similarly situated, | Case No.:  20-cv-251-WQH-BLM |
| | **ORDER** |
| Plaintiff, | |
| v. | |
| STONE BREWING CO., LLC, a California limited liability company; and DOES 1 through 100, inclusive, | |
| Defendants. | |

HAYES, Judge:

The matters before the Court are the Motion to Compel Bilateral Arbitration (ECF No. 8) and Motion to Dismiss (ECF No. 9) filed by Defendant Stone Brewing Co., LLC.

## I.    BACKGROUND

On December 23, 2019, Plaintiff Jesse Dominguez filed a Class Action Complaint in the Superior Court for the State of California, County of San Diego, against Defendants Stone Brewing Co., LLC ("Stone"), and Does 1 through 100, inclusive. (Ex. A, ECF No. 1-2). In the Complaint, Dominguez alleges that he applied for a job with Stone in April 2015. Dominguez alleges that the background investigation form in Stone's employment

1

application improperly combined a background investigation disclosure and authorization in one document, contained "extraneous information," failed to include required disclosures, included an "evergreen consent" provision, failed to identify all consumer reporting agencies that may conduct background checks, and failed to identify a basis for requesting a consumer credit report.  (*Id.* ¶¶ 27, 31-33). Dominguez alleges that Stone procured a consumer report, an investigative consumer report, and a consumer credit report based on the improper disclosure and authorization form while evaluating his employment application. Dominguez seeks to represent three classes and brings claims on behalf of himself and the class members against Stone for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681b(b)(2)(A) and 1681d(a); the Investigative Consumer Reporting Agencies Act, Cal. Civ. Code § 1786.16(a)(2) and (a)(2)(B)(iv); the Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.20.5(a); and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

On February 10, 2020, Stone removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1367, and 1441. (ECF No. 1). On March 17, 2020, Stone filed a Motion to Compel Bilateral Arbitration (ECF No. 8) and a Motion to Dismiss (ECF No. 9). Stone seeks to compel binding arbitration of Dominguez's claims pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, and to stay or dismiss any remaining claims. On April 6, 2020, Dominguez filed Oppositions to Stone's Motions. (ECF Nos. 12, 13). On April 13, 2020, Stone filed Replies. (ECF Nos. 14, 15).

## II.   FACTS

On April 9, 2015, Dominguez completed a three-page "Application for Employment" ("Employment Application") for a warehouse position with Stone. (Ex. A, Declaration of Vickie Motte in Support of Stone's Motion to Dismiss and Motion to Compel Arbitration ("Motte Decl."), ECF No. 8-3 at 6-8). The third page of the Employment Application directed Dominguez to "[p]lease read carefully, initial each paragraph, and sign below." (*Id.* at 8). Below these directions were six individual paragraphs, each with a blank space for the applicant to initial. The third paragraph stated:

> I hereby agree to submit to binding arbitration all disputes and claims arising out of the submission of this application. I further agree, in the event that I am hired by the company, that all disputes that cannot be resolved by informal internal resolution which might arise out of my employment with the company, whether during or after that employment, will be submitted to binding arbitration. This application contains the entire agreement between the parties with regard to dispute resolution, and there are no other agreements as to dispute resolution, either oral or written.

(*Id.*). Dominguez initialed the box next to the third paragraph and printed his name, signed, and dated the bottom of the Employment Application.

On April 13, 2015, Stone sent Dominguez a two-page letter offering him the position of "Warehouse Worker" ("Offer Letter"). (Ex. B, Motte Decl., ECF No. 8-3 at 10). The first paragraph of the Offer Letter stated, "This offer and your employment relationship will be subject to the terms and conditions of this letter." (*Id.*). The Offer Letter described warehouse worker job responsibilities, rate of pay, benefits, and terms of at-will employment. The Offer Letter stated that Stone's offer of employment was contingent upon Stone's verification of the information in Dominguez's Employment Application and upon Dominguez "[s]igning and abiding by Company's Confidentiality Agreement," complying with federal I-9 requirements, successfully completing a background check, and passing a drug and alcohol screening. (*Id. a*t 11). The Offer Letter stated:

> This letter, including the enclosed Confidential Agreement, constitutes the entire agreement between you and Company relating to this subject matter and supersedes all prior or contemporaneous agreements, understandings, negotiations or representations, whether oral or written, express or implied, on this subject. This letter may not be modified or amended except by a specific, written agreement signed by you and Company's President.

(*Id.*). The Offer Letter stated, "To indicate your acceptance of Company's offer on the terms and conditions set forth in this letter, please sign and date this letter in the space provided below . . . ." (*Id.*). Dominguez signed and dated the Offer Letter on April 27, 2015, below an acknowledgement that stated, "I have read this offer letter in its entirety and agree to the terms and conditions of employment." (*Id.*). Dominguez "was employed

as a Warehouse employee and eventually promoted to a Warehouse Lead by Stone . . . from approximately 2015 to July, 2019." (Declaration of Jesse Dominguez in Support of Opposition to Motion to Compel Arbitration ("Dominguez Decl."), ECF No. 13-1 ¶ 2).

## III. CONTENTIONS

Stone contends that that the Employment Application contains a valid and binding arbitration agreement requiring Dominguez to individually arbitrate his claims. Stone contends that the Court determines whether the arbitration agreement allows for class arbitration, and the arbitration agreement in this case requires arbitration on an individual basis. Dominguez contends that no arbitration agreement exists between the parties. Dominguez contends that the Offer Letter supersedes the arbitration agreement in the Employment Application. Dominguez contends that the arbitration agreement is procedurally and substantively unconscionable. Dominguez contends that the arbitrator, not the Court, decides the issue of class-wide arbitration.

## IV. FEDERAL ARBITRATION ACT

"The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Section 2 is "the 'primary substantive provision of the [FAA].'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Section 2 of the FAA provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Section 2 "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Concepcion*, 563 U.S. at 339 (internal citations and quotation marks omitted). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been

signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). "The basic role for courts under the FAA is to determine '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000)). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp.*, 207 F.3d at 1130.

## V.   EXISTENCE OF AN AGREEMENT TO ARBITRATE

Stone contends that the Employment Application that Dominguez signed and submitted contains a valid and binding arbitration agreement. Stone contends that the Offer Letter does not supersede the arbitration agreement in the Employment Application because the Offer Letter's terms are limited to "Plaintiff's start date, job duties, rate of pay, benefits, the at-will nature of his employment, and contingencies upon which the offer was based." (ECF No. 15 at 9-10).

Dominguez contends that no arbitration agreement exists between Dominguez and Stone. Dominguez contends that the arbitration agreement in the Employment Application lacks mutual assent because Stone did not sign the Employment Application. Dominguez contends that Employment Application "make[s] clear that [Stone] did not intend the application and its provisions to be a binding contract with legally enforceable obligations between the parties." (ECF No. 13 at 10). Dominguez further contends that the subsequently-signed Offer Letter does not contain an arbitration provision and supersedes any other agreement between Dominguez and Stone.

District courts "'apply ordinary state-law principles that govern the formation of contracts' to decide whether an agreement to arbitrate exists." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In California, a valid contract requires 1) the parties' capacity to contract; 2) the parties' mutual consent; 3) a lawful object; and 4) sufficient consideration. *Id.* at 1284 (citation omitted); Cal. Civ. Code § 1550. The party

moving to compel arbitration has the "burden to provide evidence of the existence of an agreement to arbitrate, [and] it is generally sufficient for that party to present a copy of the contract to the court." *Baker v. Italian Maple Holdings, LLC*, 13 Cal. App. 5th 1152, 1160 (2017) (emphasis omitted). "Once such a document is presented to the court, the burden shifts to the party opposing the motion to compel, who may present any challenges to the enforcement of the agreement and evidence in support of those challenges." *Id.* "In keeping with California's strong public policy in favor of arbitration, any doubts regarding the validity of an arbitration agreement are resolved in favor of arbitration." *Samaniego v. Empire Today, LLC*, 205 Cal. App. 4th 1138, 1144 (2012) (citing *Coast Plaza Doctors Hosp. v. Blue Cross of Cal*., 83 Cal. App. 4th 677, 686 (2000)). The arbitration agreement at issue in this case is a provision in the Employment Application. Stone has "present[ed] a copy of the [Employment Application] to the [C]ourt." *Baker*, 13 Cal. App. 5th at 1160; *see* Ex. A, Motte Decl., ECF No. 8-3 at 6-8.

Dominguez contends that the arbitration agreement lacks mutual assent because it is "buried inconspicuously" in the Employment Application and because Stone did not sign the Employment Application or demonstrate an intent that the arbitration agreement would be binding on the parties. (ECF No. 13 at 10). Under California law, "the writing memorializing an arbitration agreement need not be signed by both parties in order to be upheld as a binding arbitration agreement." *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 176 (2015). "[I]t is not the presence or absence of a *signature* which is dispositive; it is the presence or absence of evidence of an *agreement* to arbitrate which matters." *Banner Entm't, Inc. v. Superior Court*, 62 Cal. App. 4th 348, 361 (1998), *as modified*. "Evidence confirming the existence of an agreement to arbitrate, despite an unsigned agreement, can be based, for example, on 'conduct from which one could imply either ratification or implied acceptance of such a provision.'" *Serafin*, 235 Cal. App. 4th at 176 (quoting *Banner Entm't, Inc.*, 62 Cal. App. 4th at 361). In addition, "an arbitration agreement can be specifically enforced against the signing party regardless of whether the party seeking enforcement has also signed, provided that the party seeking enforcement

has performed or offered to do so." *Id.* at 177 (citing Cal. Civ. Code § 3388). In *Serafin*, for example, the California Court of Appeal held that an employer who did not sign an arbitration agreement evidenced an intent to be bound by the agreement because the agreement was "authored by [the employer], and printed on [the employer's] letterhead, . . . [and] [the employer] invoked the arbitration process . . . [and] filed the motion to stay [the plaintiff's] employment litigation and to compel arbitration." *Id.* at 176-77.

In this case, the arbitration agreement is set forth in a separate, three-sentence paragraph on the last page of the three-page Employment Application, underneath directions to "[p]lease read carefully, initial each paragraph, and sign below." (Ex. A, Motte Decl., ECF No. 8-3 at 8). Dominguez wrote his initials next to the arbitration clause and signed his name at the bottom of the Employment Application. The Employment Application identifies "Stone Brewing Co." as the "employer." (*Id.* at 6). Stone accepted the Employment Application, hired Dominguez, and now seeks to enforce the arbitration agreement. The Court finds that Stone Brewing has met its burden to demonstrate mutual assent to the arbitration agreement. *See Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1471 (2009) (explaining that an arbitration clause "was not buried in a lengthy employment agreement" where it was "contained on the last page of a seven-page employment application, underneath the heading 'Please Read Carefully, Initial Each Paragraph and Sign Below,'" and was "set forth in a separate, succinct (four-sentence) paragraph that [the plaintiff] initialed, affirming she had seen it").

Dominguez further contends that the Offer Letter supersedes the Employment Application and does not contain any agreement to arbitrate. The California Court of Appeal's decision in *Jenks v. DLA Piper Rudnic Gray Cary US LLP*, 243 Cal. App. 4th 1 (2015), is instructive on this issue. In *Jenks*, the plaintiff received and accepted an employment offer letter containing an arbitration provision. 243 Cal. App. 4th at 5. The plaintiff subsequently signed a termination agreement, ending his employment with the defendant. *Id.* The termination agreement contained an integration clause that stated, "This Agreement constitutes the entire agreement between the parties *with respect to the subject*

*matter hereof and supersedes all prior negotiations and agreements,* whether written or oral [with the exception of the prior confidentiality agreements]." *Id.* at 15. The California Court of Appeal found that the termination agreement did not "override the arbitration provision" in the offer letter and that the trial court properly concluded that the plaintiff's claims were subject to arbitration. *Id.* at 20.

The appellate court explained that "the integration clause is explicitly limited to 'the subject matter thereof,' namely, the terms of plaintiff's resignation. The Termination Agreement does not mention arbitration at all, and contains no provisions regarding dispute resolution. Consequently, the *identified* forum for dispute resolution remains arbitration based on the original Offer Letter." *Id.* at 15-16; *compare Oxford Preparatory Acad. v. Edlighten Learning Solutions*, 34 Cal. App. 5th 605, 610 (2019) (applying *Jenks* and holding that a termination agreement that was silent on arbitration did not supersede an arbitration clause in a management services agreement), *review denied*, 2019 Cal. LEXIS 5379 (July 24, 2019), *with Grey v. Am. Mgmt. Servs.*, 204 Cal. App. 4th 803, 808 (2012) (holding that an employment contract superseded an employment application arbitration clause where employment contract contained a new arbitration clause and integration clause).

In this case, Dominguez signed the Employment Application containing the arbitration agreement on April 9, 2015, and subsequently signed the Offer Letter on April 27, 2015. The Offer Letter states, "This offer and your employment relationship will be subject to the terms and conditions of this letter." (Ex. B, Motte Decl., ECF No. 8-3 at 10). The Offer Letter contains an integration clause that states, "This letter, including the enclosed Confidential Agreement, constitutes the entire agreement between you and [Stone Brewing] relating to this subject matter and supersedes all prior or contemporaneous agreements, understandings, negotiations or representations, whether oral or written, express or implied, on this subject." (*Id.* at 11). The Offer Letter states the job responsibilities, rate of pay, benefits, terms of at-will employment, and hiring contingencies for the warehouse worker position. (*See id.* at 10-11). The "subject matter"

of the Offer Letter is the terms and conditions of Dominguez's employment and offer of employment. (*See* Ex. A, Motte Decl., ECF No. 8-3 at 8 (paragraph of the Employment Application providing that "nothing contained in the application . . . is intended to create an *employment* contract . . ." (emphasis added))). The Offer Letter is silent as to arbitration. Arbitration is not the "subject matter" of the Offer Letter. *See Jenks*, 243 Cal. App. 4th at 17 (explaining that "[w]here one agreement identifies arbitration as the forum for resolving disputes, and a subsequent agreement omits any reference to such a forum, 'any doubts must be resolved in favor of arbitration'" (quoting *Ramirez-Baker v. Beazer Homes, Inc.*, 636 F. Supp. 2d 1008, 1017 (E.D. Cal. 2008) (holding that "the integrated clause of the employment contracts is limited to the terms of the employment contracts"))). The Court finds that the Offer Letter does not override the arbitration agreement in the Employment Application.

Stone has met its burden to "provide evidence of the existence of an agreement to arbitrate." *Baker*, 13 Cal. App. 5th at 1160 (emphasis omitted). Accordingly, the Court examines Dominguez's "challenges to the enforcement of the agreement." *Id.*

## VI.   UNCONSCIONABILITY

Dominguez challenges the enforceability of the arbitration agreement on the grounds that it is unconscionable. "Under California law, a contractual clause is unenforceable if it is both procedurally and substantively unconscionable." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007), *overruled on other grounds by Kilgore*, 718 F.3d 1052. "Courts apply a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000), *abrogated in part on other grounds by Concepcion*, 563 U.S. 333). "Still, 'both [must] be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.'" *Id.* at 1072-73 (alteration in original) (quoting *Armendariz*, 24 Cal. 4th at 114). "[T]he party opposing arbitration . . . has the burden of proving the arbitration

provision is unconscionable." *Higgins v. Superior Court*, 140 Cal. App. 4th 1238, 1249 (2006) (alterations in original) (citation and quotation marks omitted), *modified by* 2006 Cal. App. LEXIS 1061 (Cal. Ct. App. July 10, 2006).

### a. <u>Procedural Unconscionability</u>

Dominguez contends that the arbitration agreement is procedurally unconscionable because it is adhesive and oppressive. Dominguez contends that Stone instructed him to sign several documents and forms, and Dominguez "was never provided with the opportunity to fully read, review, or understand the [arbitration] provision before signing the application." (ECF No. 13 at 7). Dominguez contends that the arbitration agreement fails to identify the applicable arbitration rules. Stone contends that Dominguez initialed next to the arbitration clause, demonstrating that he reviewed, understood, and acknowledged the agreement. Stone contends that the absence of arbitration rules does not invalidate the arbitration agreement.

The "[p]rocedural unconscionability analysis focuses on 'oppression or surprise.'" *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) (en banc) (quoting *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)). "'Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice,' while '[s]urprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them.'" *Id.* (alteration in original) (quoting *Flores*, 93 Cal. App. 4th at 853).

The "[u]nconscionability analysis begins with an inquiry into whether the contract is one of adhesion." *Armendariz*, 24 Cal. 4th at 113 (citing *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817-19 (1981)). "'The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" *Id.* (alteration in original) (quoting *Neal v. State Farm Ins. Cos.*, 188 Cal. App. 2d 690, 694 (1961)). A contract of adhesion is procedurally unconscionable if it was "presented on a

take-it-or-leave-it basis" and "was oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.'" *Nagrampa*, 469 F.3d at 1281 (alteration in original) (quoting *Flores*, 93 Cal. App. 4th at 853). "The [California] Supreme Court has acknowledged that adhesion contracts in the employment context typically contain some measure of procedural unconscionability." *Roman*, 172 Cal. App. 4th at 1470; *see Armendariz*, 24 Cal. 4th at 115 ("[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement."). Accordingly, the court "does not subject a typical employment contract or other adhesion contract 'to the same degree of scrutiny as [c]ontracts of adhesion that involve surprise or other sharp practices.'" *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1262 (2017) (alteration in original) (quoting *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016)).

Dominguez states in his Declaration that he "was told [he] was required to sign the [Employment Application] . . . if [he] wanted to be hired" by Stone. (Dominguez Decl., ECF No. 13-1 ¶ 3). The parties do not dispute that completing and signing the Employment Application was a condition of hiring and that there was no opportunity to negotiate. The Court concludes that the arbitration agreement in the Employment Application is adhesive. "Nevertheless, the adhesive nature of a contract, without [other indications of oppression or surprise], [ ] give[s] rise to a low degree of procedural unconscionability at most." *Poublon*, 846 F.3d at 1261-62. Accordingly, the Court "turns to the question whether there are other indications of oppression or surprise that would lead California courts to conclude that the degree of procedural unconscionability is high." *Id.* at 1262.

Dominguez asserts that Stone did not give him the opportunity to fully read, review, or understand the arbitration agreement. Dominguez states in his Declaration that he "initially applied for the position at Stone through the website Indeed.com." (Dominguez Decl., ECF No. 13-1 ¶ 3). Dominguez states that Stone interviewed him and instructed him

to "come into the office for orientation." (*Id.*). Dominguez states that at orientation, Stone gave Dominguez "a set of documents to sign, including another job employment application." (*Id.*). Dominguez states that he "was instructed where to sign the documents and returned them immediately." (*Id.*). Dominguez states that Stone did not explain the arbitration agreement, and Dominguez "was not given time to fully read the documents prior to signing . . . ." (*Id.*).

The Employment Application submitted by Stone shows that Dominguez dated the first page of the three-page Employment Application April 1, 2015, and dated the last page April 9, 2015. (*See* Ex. A, Motte Decl., ECF No. 8-3 at 6 (first page of Employment Application where Dominguez filled in the box for "Today's Date" with "4/1/15"); Ex. A, Motte Decl., ECF No. 8-3 at 8 (last page of Employment Application that Dominguez signed and dated "4/9/15")). The dates entered by Dominguez on the Employment Application show that Dominguez had at least eight days to read and consider the arbitration agreement. In addition, the arbitration agreement is set forth in a separate, three-sentence paragraph on the last page of the three-page Employment Application, underneath directions to "[p]lease read carefully, initial each paragraph, and sign below." (Ex. A, Motte Decl., ECF No. 8-3 at 8). Dominguez wrote his initials next to the arbitration agreement, affirming that he reviewed it. *See Roman*, 172 Cal. App. 4th at 1471 (finding limited procedural unconscionability under similar circumstances); *see also Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001) ("A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." (citations omitted)), *as modified*.

Dominguez further asserts that the arbitration agreement is procedurally unconscionable because it fails to identify the applicable arbitration rules. In *HM DG, Inc. v. Amini*, the California Court of Appeal explained that under California's equivalent of the FAA,

the absence of a specified forum or set of rules in an arbitration clause does not invalidate the agreement to arbitrate. Rather, in the absence of such

provisions, "the parties to the agreement who seek arbitration and against whom arbitration is sought may agree on a method of appointing an arbitrator . . ."—including the forum and rules that will govern the arbitration—or, if the parties cannot agree, "the court, on petition of a party to the arbitration agreement, shall appoint the arbitrator."

219 Cal. App. 4th 1100, 1110 (2013) (alteration in original) (quoting Cal. Civ. Code § 1281.6). The court explained that the arbitration rules are "part and parcel of the appointment of an arbitrator—that is, for example, if the parties were to elect to appoint an American Arbitration Association (AAA) arbitrator, that appointment would entail arbitration in an AAA forum under AAA rules." *Id.* The FAA similarly provides, in relevant part, that "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator . . . , such method shall be followed; but if no method be provided therein, . . . then upon the application of either party to the controversy the court shall designate and appoint an arbitrator . . . who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein." 9 U.S.C. § 5.

The arbitration agreement in this case does not identify any arbitration rules. However, the failure to specify or attach applicable rules does not increase the procedural unconscionability of the Employment Application or its arbitration provision. *See Nguyen v. Applied Med. Res. Corp.*, 4 Cal. App. 5th 232, 248-49 (2016) (explaining that although some courts have held that the failure to provide a copy of the arbitration rules supports a finding of procedural unconscionability, in those cases the plaintiffs' unconscionability claims depended on the contents of the arbitration rules rather than the arbitration agreement). The Court finds that indications of "oppression or surprise" that would demonstrate a high degree of procedural unconscionability are lacking in this case. *Poublon*, 846 F.3d at 1262. The Court concludes that the arbitration agreement contains "some measure of procedural unconscionability" in that it was "presented on a take-it-or-leave-it basis." *Roman*, 172 Cal. App. 4th at 1470; *Nagrampa*, 469 F.3d at 1281.

///

///

### b. **Substantive Unconscionability**

Dominguez contends that the terms of the arbitration agreement in the Employment Application are substantively unconscionable because they are overbroad and can be read to encompass claims that are not arbitrable, including PAGA and workers' compensation claims. Dominguez contends that the arbitration agreement contains an illegal jury trial waiver. Dominguez contends that the arbitration agreement is vague and ambiguous as to the arbitrator selection process and arbitration fees. Dominguez further contends that the arbitration agreement lacks mutuality because "[Stone] has not signed the provision and the language appears only to bind [Dominguez]." (ECF No. 13 at 19-20).

Stone contends that a broadly-worded arbitration clause is not unconscionable merely because it could be read to encompass claims that are not arbitrable. Stone contends that Dominguez does not assert PAGA or workers' compensation claims. Stone contends that the California Supreme Court has determined that agreements to arbitrate are distinguishable from illegal jury trial waivers. Stone contends that the FAA specifies the manner in which an arbitrator will be appointed in the absence of a selection provision. Stone contends that the lack of provision regarding arbitration fees does not make the arbitration agreement unconscionable.

"[P]rocedural unconscionability alone does not render an agreement unenforceable. There must also be some measure of substantive unconscionability." *Roman*, 172 Cal. App. 4th at 1471 (citing *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003); *Armendariz*, 24 Cal. 4th at 114); *see Armendariz*, 24 Cal. 4th at 114 (explaining that both types of unconscionability "must [ ] be present in order for a court to . . . refuse to enforce a contract or clause under the doctrine of unconscionability" (citation and quotation marks omitted)). "An arbitration provision is substantively unconscionable if it is 'overly harsh' or generates 'one-sided' results." *Nagrampa*, 469 F.3d at 1280 (quoting *Armendariz*, 24 Cal. 4th at 114).

"[T]he paramount consideration in assessing conscionability is mutuality." *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 657 (2004). "Agreements to arbitrate must contain at least 'a modicum of bilaterality' to avoid unconscionability." *Id.*

(quoting *Armendariz*, 24 Cal. 4th at 119). "[A]n arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." *Armendariz*, 24 Cal. 4th at 120. "Courts have found one-sided employer-imposed arbitration provisions unconscionable where they provide that employee claims will be arbitrated, but the employer retains the right to file a lawsuit in court for claims it initiates, or where only the types of claims likely to be brought by employees (wrongful termination, discrimination etc.) are made subject to arbitration." *Serafin*, 235 Cal. App. 4th at 181 (citing cases).

In *Nguyen*, the plaintiff submitted a job application that included an arbitration clause. 4 Cal. App. 5th at 241. The arbitration clause stated, in relevant part:

> I hereby agree to submit to binding arbitration all disputes and claims arising out of or relating to the submission of this application. I further agree, in the event that I am hired by the company, that all disputes that cannot be resolved by informal internal resolution which might arise out of or relate to my employment with the company, whether during or after that employment, will be submitted to binding arbitration.

*Id.* The plaintiff argued that the language "I hereby agree to submit" required the employee, but not the employer, to submit to binding arbitration. *Id.* at 251. The California Court of Appeal disagreed, determining that "there was a mutual obligation to arbitrate any and all employment-related issues." *Id.* at 253. The court explained:

> We [ ] decline to find that the mere inclusion of the words 'I agree' by one party in an otherwise mutual arbitration provision destroys the bilateral nature of the agreement . . . . [P]laintiff was doing no more than acknowledging that all disputes between him and defendant would be resolved through binding arbitration. No separate signature was required by defendant, as it was the company that set binding arbitration of all disputes as a condition of plaintiff's employment.

*Id.* at 252-53. (internal citation and quotation marks omitted).

In this case, the arbitration agreement that Dominguez signed states, in relevant part:

I hereby agree to submit to binding arbitration all disputes and claims arising out of the submission of this application. I further agree, in the event that I am hired by the company, that all disputes that cannot be resolved by informal internal resolution which might arise out of my employment with the company, whether during or after that employment, will be submitted to binding arbitration.

(Ex. A, Motte Decl., ECF No. 8-3 at 8). By agreeing that "all disputes and claims arising out of the submission of this application" and "all disputes . . . which might arise out of [Dominguez's] employment with [Stone]" would be submitted to binding arbitration, Dominguez "was doing no more than acknowledging that all disputes between him and [Stone] would be resolved through binding arbitration." *Id.*; *Nguyen*, 4 Cal. App. 5th at 252; *see Serafin*, 235 Cal. App. 4th at 182 (stating that "where an arbitration agreement sets forth that 'any and all' disputes between the parties will be arbitrated, courts (including this one) have found the agreement to be fully mutual in scope"). The Court concludes that the arbitration agreement has the "modicum of bilaterality" required for an arbitration agreement to be valid. *Armendariz*, 24 Cal. 4th at 117.

Dominguez contends that the arbitration agreement is substantively unconscionable because it can be read to encompass claims that are not arbitrable, including workers' compensation and PAGA claims. California courts routinely uphold broadly-worded arbitration agreements in the employment context, even though the agreements could theoretically be read to encompass unarbitrable claims. *See, e.g.*, *Iskanian v. CLS Transp. L.A., Inc.*, 59 Cal. 4th 348, 391 (2014) (examining a broadly-worded arbitration agreement and concluding that the defendant could not compel arbitration of unarbitrable claims but that the agreement was "otherwise enforceable according to its terms"); *Poublon*, 846 F.3d at 1264 ("[Plaintiff] argues that because the waiver of a representative PAGA claim is unenforceable, it is also substantively unconscionable. This is incorrect . . . . [T]he unenforceability of the waiver of a PAGA representative action does not make [an arbitration agreement] substantively unconscionable."); *see also Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107, 115 (2004) (finding provision excluding workers'

compensation and unemployment claims from arbitration agreement "immaterial" because such claims are subject to their own adjudicatory systems and not proper subject matter for arbitration). In addition, Dominguez does not bring PAGA or workers' compensation claims in this case. The Court finds that the arbitration agreement is not substantively unconscionable on the grounds that it could be read to encompass unarbitrable claims.

Dominguez contends that the arbitration agreement is substantively unconscionable because it includes an illegal jury trial waiver. The California Supreme Court has distinguished arbitration agreements from jury trial waivers. *See Grafton Partners v. Superior Court*, 36 Cal. 4th 944, 955 (2005) ("Unlike predispute jury waivers, predispute arbitration agreements are specifically authorized by statute . . . . [A]rbitration agreements are distinguishable from waivers of the right to jury trial in that they represent an agreement to avoid the judicial forum altogether." (citing Cal. Civ. Code § 1281)). Arbitration agreements are substantively unconscionable if they "require[ ] plaintiffs to waive in advance their right to a jury trial for any dispute for which arbitration is not allowed by law." *Dougherty v. Roseville Heritage Partners*, 47 Cal. App. 5th 93, 107 (2020). The arbitration agreement in this case does not require Dominguez to waive the right to a jury trial for any unarbitrable dispute.

Dominguez further contends that the arbitration agreement is substantively unconscionable because it fails to include provisions for selecting an arbitrator and apportioning arbitration costs. "[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz*, 24 Cal. 4th at 110-11. The arbitration agreement in this case is silent on fees and costs and does not require Dominguez to bear any cost he would not otherwise have to bear. The Court finds that the arbitration agreement is not substantively unconscionable on the grounds that it fails to include rules for appointing an arbitrator and apportioning costs. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) ("[T]he arbitration agreement's silence on

the subject [of fees and costs], and that fact alone is plainly insufficient to render it unenforceable. The 'risk' that [the plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.").

The Court finds that Dominguez has not met his burden to demonstrate that the arbitration agreement is substantively unconscionable. The Court concludes that "a valid agreement to arbitrate exists." *Kilgore*, 718 F.3d at 1058 (citation and quotation marks omitted).

## VII.   CLAIMS SUBJECT TO ARBITRATION

Having determined that a valid agreement to arbitrate exists, the Court examines "whether the agreement encompasses the dispute at issue.'" *Kilgore*, 718 F.3d at 1058 (quoting *Chiron Corp.*, 207 F.3d at 1130). Disputes are presumed to be subject to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation and quotation marks omitted). The arbitration agreement in the Employment Application provides that parties "agree to submit to binding arbitration all disputes and claims arising out of the submission of this application." (Ex. A, Motte Decl., ECF No. 8-3 at 8). Dominguez brings claims against Stone for violations of federal and California consumer credit laws arising from Stone's allegedly improper disclosure of background check information during its employment application process. The Court concludes that the arbitration agreement "'encompasses the dispute at issue.'" *Kilgore*, 718 F.3d at 1058 (quoting *Chiron Corp.*, 207 F.3d at 1130). Dominguez's claims "aris[e] out of the submission of th[e] [Employment] [A]pplication" and are subject to the terms of the arbitration agreement. (Ex. A, Motte Decl., ECF No. 8-3 at 8).

## VIII.   ARBITRATION ON AN INDIVIDUAL OR CLASS BASIS

Dominguez seeks to represent three classes and brings both individual and class claims against Stone for violations of federal and California consumer credit laws. Stone contends that the claims in this case may only be arbitrated on an individual, non-class

basis. Stone contends "there is no clear contractual basis for compelling class arbitration." (ECF No. 8-1 at 12). Stone contends that the issue of whether the parties agreed to classwide arbitration "is a question of arbitrability presumptively assigned by the FAA to the courts." (ECF No. 15 at 6). Dominguez contends that "the issue of class arbitrability is an issue ultimately the arbitrator, not the Court, should decide." (ECF No. 13 at 20).

"Under the [FAA], arbitration is a matter of contract . . . ." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (citing *Rent-a-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Accordingly, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Id.* (quoting *Rent-a-Center, W., Inc.*, 561 U.S. at 68-69). "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.* at 530. "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chi., Inc.*, 514 U.S. at 944 (alterations in original) (quoting *AT&T Techs., Inc.*, 475 U.S. at 649).

> If the contract is silent on the matter of who primarily is to decide "threshold" questions about arbitration, . . . courts presume that the parties intend courts, not arbitrators, to decide . . . disputes about "arbitrability." These include questions such as "whether the parties are bound by a given arbitration clause" or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy."

*BG Grp. plc v. Rep. of Argentina*, 572 U.S. 25, 34 (2014) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "On the other hand, courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." *Id.* "These procedural matters include claims of 'waiver, delay, or a like defense to arbitrability.'" *Id.* at 35 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25). "And they include the satisfaction

of 'prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate.'" *Id.* (quoting *Howsam*, 537 U.S. at 85).

The Supreme Court "has not yet decided whether the availability of class arbitration is a question of arbitrability." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 n. 2 (2013); *see Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1431 n. 4 (2019) ("assuming" that the question of class arbitration "is one of arbitrability"). The Court of Appeals for the Ninth Circuit addressed the issue in an unpublished case, holding that that the district court did not err in striking the plaintiff's class claims because "[i]ssues that 'contracting parties would likely have expected a court to have decided' are considered 'gateway questions of arbitrability' for courts, and not arbitrators, to decide," and "[t]he Supreme Court has made it clear that 'class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator.'" *Eshagh v. Terminix Int'l Co., L.P.*, 588 F. App'x 703, 704 (9th Cir. 2014) (quoting *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010)).

Other circuit courts have found that class arbitrability is an issue for judicial determination. *See JPay, Inc. v. Kobel*, 904 F.3d 923, 936 (11th Cir. 2018) (finding that "the question of class arbitration availability is properly categorized as a question of arbitrability."), *cert. denied*, 2019 U.S. Dist. LEXIS 2530 (Apr. 15, 2019); *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 507 (7th Cir. 2018) (same); *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 972 (8th Cir. 2017) (same); *Del Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 876-77 (4th Cir. 2016) (same); *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 335-36 (3d Cir. 2014) ("[T]he availability of class arbitration is a question of arbitrability for a court to decide unless the parties unmistakably provide otherwise.") (internal quotation marks omitted); *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013) ("[T]he question whether an arbitration agreement permits classwide arbitration is a gateway matter . . . reserved for judicial determination

unless the parties clearly and unmistakably provide otherwise.") (internal quotation marks omitted)).

District courts in the Ninth Circuit have reached the same conclusion. *See Cobarruviaz v. Maplebear, Inc.*, 143 F. Supp. 3d 930, 944 (N.D. Cal. 2015) ("In the absence of a clear and unmistakable delegation, the Court decides the gateway question of whether class arbitration is permitted by the Agreement."); *Cervantes v. Voortman Cookies, Ltd.*, No. 3:19-cv-00700-H-BGS, 2019 U.S. Dist. LEXIS 126168, at *18 (S.D. Cal. July 29, 2019) ("[T]he Court here concludes that availability of class arbitration is a gateway question of arbitrability presumptively for the Court to decide."); *Armenta v. Staffworks, LLC*, No. 17-cv-00011-BAS-NLS, 2017 U.S. Dist. LEXIS 114266, at *7-8 (S.D. Cal. July 21, 2017) (stating that the court, not the arbitrator, decides whether class arbitration is permitted), *appeal dismissed*, 2017 U.S. App. LEXIS 28118 (Oct. 30, 2017); *Guess?, Inc. v. Russell*, No. 2:16-cv-00780-CAS(ASx), 2016 U.S. Dist. LEXIS 53765, at *10 (C.D. Cal. Apr. 18, 2016) (same).

This Court concludes that availability of class arbitration is a question of arbitrability presumptively for the Court to decide. In this case, the arbitration agreement does not contain language delegating any question of arbitrability to the arbitrator and does not contain a reference to arbitration rules that delegate any question of arbitrability to the arbitrator. The parties' conduct does not demonstrate an agreement to arbitrate the issue of whether class arbitration is permitted. There is no indication that the parties "clearly and unmistakably" delegated the question of arbitrability of class claims to the arbitrator rather than the Court. *AT&T Techs., Inc.*, 475 U.S. at 649. Accordingly, the Court determines whether the arbitration agreement permits classwide arbitration.

Because of "'crucial differences' between individual and class arbitration, courts may not infer [that the parties to an arbitration agreement] consent[ed] to participate in class arbitration absent an affirmative 'contractual basis for concluding that the part[ies] *agreed* to do so.'" *Lamps Plus, Inc.*, 139 S. Ct. at 1416 (quoting *Stolt-Nielsen S.A.*, 559 U.S. at 684). "Silence is not enough; the 'FAA requires more.'" *Id.* (quoting *Stolt-Nielsen*

*S.A.*, 559 U.S. at 687). In this case, the arbitration agreement is silent on the issue of class arbitration. Accordingly, the arbitration agreement does not permit arbitration of claims on a classwide basis. The Court concludes that Dominguez is required to arbitrate his claims against Stone on an individual basis. *See Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 514 (9th Cir. 2019) (explaining that *Lamps Plus* "confirms that the parties here should be ordered into individual arbitration, as they did not agree to class-wide or collective arbitration").

## IX.   DISMISSAL OR STAY OF THE ACTION

Having determined that the class claims in this case may not be arbitrated and that Dominguez's individual claims are compelled to arbitration, the Court examines whether dismissal or stay of the action is appropriate. "If the court finds that an arbitration clause is valid and enforceable, the court should stay or dismiss the action to allow the arbitration to proceed." *Kam-Ko Bio-Pharm Trading Co., Ltd. v. Mayne Pharma Inc.*, 560 F.3d 935, 940 (9th Cir. 2009) (citing *Nagrampa*, 469 F.3d at 1280); *see* 9 U.S.C. § 3 (providing that "the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . ."); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (explaining that the district court has discretion to the dismiss an action where all of the plaintiff's claims are barred by an arbitration clause); *see also Ziober v. BLB Res., Inc.*, 839 F.3d 814, 821 (9th Cir. 2016) (affirming district court decision compelling arbitration and dismissing case).

In this case, the Court has concluded that Dominguez is required to arbitrate all of his individual claims against Stone. Dominguez is the only putative class representative in this action. Accordingly, there is no remaining class representative who can pursue the class claims. *See* Fed. R. Civ. P. 23(a). Neither the Supreme Court nor the Court of Appeals for the Ninth Circuit has determined what happens to class claims where the only putative class representative is compelled to individual arbitration, and arbitration on a classwide basis is not permitted by the arbitration agreement. District courts in this circuit have stayed or dismissed class claims pending individual arbitration. *See Casement v. Soliant Health,*

*Inc.*, No. 1:19-cv-01262-DAD-JLT, 2020 U.S. Dist. LEXIS 75493, at *29 (E.D. Cal. Apr. 29, 2020) (dismissing class claims where putative class representative was required to arbitrate individual claims, and arbitration agreement did not allow classwide arbitration), *appeal filed* (May 29, 2020) (No. 20-16037); *Yu v. Volt Info. Scis., Inc*, No. 19-cv-01981-LB, 2019 U.S. Dist. LEXIS 129031, at *20 (N.D. Cal. Aug. 1, 2019) (same); *Cervantes*, 2019 U.S. Dist. LEXIS 126168, at *20 (same); *Reynosa-Juarez v. Accountable Healthcare Staffing, Inc.*, No. 5:18-cv-06302-EJD, 2019 U.S. Dist. LEXIS 194071, at *22 (N.D. Cal. Nov. 7, 2019) (staying putative class action where arbitration agreement required arbitration on an individual basis); *Ford v. Account Control Tech., Inc.*, No. 1:19-CV-203 AWI-JLT, 2019 U.S. Dist. LEXIS 74564, at *5 (E.D. Cal. May 2, 2019) (same); *see also Yun Park v. MSX Ams., Inc.*, No. 8:19-cv-01487-JLS-KES, 2019 U.S. Dist. LEXIS 182121, at *11-12 (C.D. Cal. Oct. 9, 2019) (dismissing class claims and staying individual claims where putative class representative was required to arbitrate individual claims, and arbitration agreement did not allow classwide arbitration); *Farfan v. SSC Carmichael Operating Co. LP*, No. 18-cv-01472-HSG, 2019 U.S. Dist. LEXIS 174026, at *8 (N.D. Cal. Oct. 7, 2019) (dismissing class claims and staying PAGA claims).

The Court exercises its discretion and concludes that dismissal of this action without prejudice is appropriate.

## X.   CONCLUSION

IT IS HEREBY ORDERED that the Motion to Compel Bilateral Arbitration (ECF No. 8) is granted. The parties are ordered to proceed with Plaintiff's individual claims via arbitration in accordance with the terms of the parties' agreement.

IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 9) is denied as moot. This action is dismissed without prejudice.

Dated:  July 2, 2020

Hon. William Q. Hayes
United States District Court